File Name: 06a0125n.06
Filed: February 16, 2006

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 04-3236

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

CLARENCE WEAVER,

     Petitioner-Appellant,

v.

CURTIS WINGARD, Warden,

     Respondent-Appellee.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF OHIO

_____ /

Before:     MARTIN, NORRIS, and DAUGHTREY, Circuit Judges

     BOYCE F. MARTIN, JR., Circuit Judge. Clarence Weaver, having been convicted of Aggravated Murder, Forgery, and Tampering with Evidence in Ohio, appeals the district court's denial of a writ of habeas corpus. The sole issue before this Court is whether Weaver was denied effective assistance of counsel as required by the Sixth and Fourteenth Amendments based upon a potential conflict of interest between Weaver's attorney and one of the government's witnesses. For the following reasons, we AFFIRM the district court's judgment denying habeas relief.

I.

     On November 15, 1991, Clarence Weaver called 911 to report that he had discovered his wife dead in their apartment in Elyria, Ohio. Throughout November, the police investigated the murder of Helen Weaver. This investigation led the police to believe that Clarence Weaver and his

girlfriend, Elizabeth Campbell, were potential suspects. As a result, Campbell contacted Attorney

Kenneth Lieux to provide legal advice for them. Lieux had previously represented Campbell in a

real estate deal in 1990. During November and December, Weaver and Campbell were contacted

by the police regarding the death of Helen Weaver and during that time they both met with Lieux.

According to Lieux, he did not represent Campbell but merely told her the "standard advice to any

suspect in any crime . . . not to talk to the police without your lawyer present." Lieux represented

Weaver because he was the police's main suspect in the murder investigation. On June 21, 1992,

Campbell agreed to cooperate with the police in exchange for immunity.

Clarence Weaver was indicted for Aggravated Murder, Forgery, and Tampering on March

16, 1993. Throughout the proceedings, Lieux continued to represent Weaver. At Weaver's trial,

Campbell testified as a witness for the government. The trial ended with guilty verdicts on all three

counts and the court sentenced Weaver to a term of life with parole eligibility after twenty years.

Weaver unsuccessfully appealed his conviction to the Ohio Court of Appeals and the Ohio

Supreme Court. Weaver then filed a petition for post-conviction relief with the trial court. The

court rejected his petition and that decision was affirmed by the Ohio Court of Appeals and the Ohio

Supreme Court. Weaver then filed a petition for a writ of habeas corpus in the district court on

December 15, 1998. After the district court denied relief but granted a certificate of appealability

as to whether Weaver was denied effective assistance of counsel based on a conflict of interest,

Weaver appealed to this Court on February 24, 2004.

II.

Weaver's petition for a writ of habeas corpus was filed under 28 U.S.C. § 2254 and this Court must therefore apply the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996. 28 U.S.C. § 2254(d). Pursuant to that section, a writ of habeas corpus may not be granted unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). Nevertheless, an explicit statement by the Supreme Court is unnecessary; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (quoting *Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir.2002)). We review the district court's decision to deny the writ *de novo* and its factual findings for clear error. *Lakin v. Stine*, 431 F.3d 959, 962 (6th Cir. 2005).

Weaver appeals the sole issue of whether his trial counsel was ineffective due to a conflict of interest between his representation of Weaver and his representation of Campbell. The Sixth Amendment states that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. The Supreme Court enumerated the standard for evaluating ineffective assistance of counsel claims in *Strickland v. Washington*, 466 U.S. 668 (1984). Pursuant to *Strickland*, the defendant must show 1) that counsel's performance was deficient or objectively unreasonable and 2) that these errors prejudiced the defense by showing that, if not for the deficient representation, there was a reasonable probability the outcome would have been different. *Id.* at 694. In the case of an ineffective assistance of counsel claim based on an alleged conflict of interest, the Supreme Court has stated the defendant

must show 1) an actual and active conflict and 2) how that conflict adversely affected counsel's performance. *Cuyler v. Sullivan*, 446 U.S. 335, 349-350 (1980).

The Supreme Court attempted in *Mickens v. Taylor*, 535 U.S. 162, 175 (2002), to draw a clear line between the *Strickland* and *Sullivan* standards by emphasizing that the *Sullivan* standard is for *actively represented* conflicting interests. The *Mickens* Court was clear that concurrent representation deserved a more relaxed *Sullivan* standard because in those cases it is difficult to prove prejudice; however, "[w]hether *Sullivan* should be extended to [successive representation] cases remains, as far as the jurisprudence of this Court is concerned, an open question." *Id*. at 175. This Court in *Lord v. Ishee*, 384 F.3d 189, 193 (2004), made it clear that successive representation cases must be evaluated under the *Strickland* standard. Therefore, we must determine whether this case is one of concurrent representation and thus the *Sullivan* standard controls or whether it is one of successive representation and the *Strickland* standard applies.

Given the timeline of events in this case, there are two aspects of Attorney Lieux's representation which are undisputed: first, that at some point prior to the murder of Helen Weaver, Lieux represented Campbell in unrelated legal actions and second, at the moment Clarence Weaver was charged with his wife's murder, Lieux represented only Weaver and not Campbell (who, at that time, had made her deal with the government). Therefore, to answer the successive or concurrent representation question, this Court must focus on the time between Helen Weaver's death and the indictment of Clarence Weaver. It is undisputed that during this time Lieux and Weaver had an attorney-client relationship. Campbell, however, was present at at least one meeting between Lieux and Weaver, put Weaver in touch with Lieux, and was told by Lieux to not speak with the police

without her lawyer present. In Ohio, the attorney-client relationship depends on the reasonable belief of the prospective client. *Cuyahoga County Bar Ass'n v. Hardiman*, 798 N.E.2d 369, 373 (Ohio 2003); *see generally* FED. R. EVID. 501 note 71. In this case, both the prospective client and the attorney agree that during this time no attorney-client relationship existed. While this fact is not determinative, it is telling in this Court's determination of whether Campbell's belief was a reasonable one. Given the facts of the situation and the nature of the discussions between Campbell and Lieux, it seems objectively reasonable for Campbell to believe that no attorney-client relationship existed. *See Moss v. United States*, 323 F.3d 445, 458-59 (6th Cir. 2003) ("Attorney Murphy did not provide "legal advice" during these post-arraignment visits with Moss. . . Absent any specific and credible evidence as to the nature of these discussions, it would be mere speculation for this Court to conclude that Attorney Murphy provided any assistance that would create, or continue, an attorney-client relationship with Moss.") Therefore, Lieux's separate representations of Campbell and Weaver were successive representations and the appropriate standard to review these relationships is the *Strickland* standard.

The first prong of the *Strickland* test is whether counsel's performance was deficient or objectively unreasonable. To this end, Weaver argues that Lieux's cross-examination of Campbell was ineffective due to Lieux's previous representation of Campbell. Like the district court, we do not find Lieux's cross-examination to be deficient. As with most decisions during the heat of a trial, the cross-examination was not perfect, but perfection is not required for a performance to be considered constitutionally acceptable. *Smith v. Mitchell*, 348 F.3d 177, 206 (6th Cir. 2003) ("at issue here is ultimately the right to a fair trial, not to perfect representation"). During trial, Lieux

challenged Campbell's credibility, questioned her about her criminal activities in relation to this crime, and elicited testimony that Campbell suggested she and Weaver clean the apartment and forge the deceased's name on a check. Given this level of advocacy, Lieux's performance was not deficient. Because Weaver's claim of ineffective assistance of counsel fails at *Strickland*'s first prong, there is no reason for this Court to address the second prong.

IV.

For the foregoing reasons, we AFFIRM the district court's denial of a writ of habeas corpus.